**Beatrice J. REILLY and Foursome Inn Corp., Plaintiffs-Appellants,**

**v.**

**John H. DOYLE, Individually, and as Chief of Police of the Town of East Hampton, et al., Defendants-Appellees.**

**No. 632, Docket 72-2314.**

United States Court of Appeals, Second Circuit.

Argued March 28, 1973.

Decided July 26, 1973.

———◆———

Charles G. Pillon, New York City, for plaintiffs-appellants.

Stephen P. Seligman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty., Gen., on the brief), for defendant-appellee intervenor pro se.

Melvyn Tanenbaum, Huntington, N.Y., on the brief, for defendants-appellees Joseph McCully and Teresa McCully.

James M. Leonard, New York City (McHugh, Heckman, Smith & Leonard, New York City on the brief), for all other defendants-appellees.

Before LUMBARD and FRIENDLY, Circuit Judges, and THOMSEN, District Judge.*

LUMBARD, Circuit Judge:

Beatrice J. Reilly and the Foursome Inn Corp. appeal from a decision of Chief Judge Mishler of the Eastern District of New York dismissing plaintiffs' complaint under 42 U.S.C. §§ 1983 and 1985. The complaint sought injunctive and declaratory relief, and money damages.

Plaintiff Beatrice Reilly is the owner and chief operator of the corporate plaintiff Foursome Inn Corp. The corporation owns and operates a hotel, bar, and restaurant called "Surf and Sand" in the Town of East Hampton. The plaintiffs' complaint alleges that Joseph and Teresa McCully, the "private" defendants,[1] in early 1971 adopted a

---

* Senior District Judge of the District of Maryland, sitting by designation.

1. The "private" defendants Joseph and Teresa McCully are two citizens not hold-

scheme to force the plaintiffs out of business, or to compel the plaintiffs to sell "Surf and Sand" to the McCullys for nominal consideration. In furtherance of this plan it is alleged that the McCullys induced the "public defendants," a group consisting of members of the Town Board of East Hampton, the Chief of Police, officers of the Police Department, and Justices of the Peace, to join in this enterprise by performing various acts which deprived the plaintiffs of their federally guaranteed rights. The only justices of the peace in East Hampton also serve on the Town Board.

In considering defendants' motion to dismiss the complaint on the grounds that the court lacked subject matter jurisdiction (F.R.Civ.P. 12(b)(1)) and that the complaint failed to state a claim upon which relief may be granted (F.R. Civ.P. 12(b)(6)), the district judge permitted the parties to submit affidavits. This had the effect of converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Chief Judge Mishler then granted the "public" defendants' motion to dismiss pursuant to Rule 12(b)(6), and presumably granted the motion for summary judgment.[2] For the reasons stated below we affirm the district court's dismissal of the complaint.

In 1966 the Town Board of East Hampton acting pursuant to Section 130 of the Town Law of New York State, N.Y. Town Law § 130 (McKinney's Consol.Laws c. 62, 1965), adopted an "Anti-Noise Ordinance." In June, 1971 the "private" defendants, the McCullys, complained to the East Hampton Police Department concerning noise emanating from the plaintiffs' "Surf and Sand." Defendant Jarrett, a police officer, entered the plaintiffs' premises at twelve midnight on June 14, 1971, and issued a summons to Reilly charging her with violating the "Anti-Noise Ordinance." Later that day Jarrett returned to the "Surf and Sand" and allegedly used force and violence to take Beatrice Reilly into custody, and to bring her to the police station. On July 27, 1971 Beatrice Reilly was tried before and convicted by "public" defendant Frood, a justice of the peace and a non-lawyer. This conviction and the fine of $50 was affirmed by a state appellate court. Later that summer, another police officer, defendant Lyon, issued a summons to Judy Schenck, an employee of the plaintiffs, for violating the noise ordinance. In September, 1971 still another summons was issued to Beatrice Reilly for violating the same ordinance. Both of these cases are still pending in the state court.

ing any public office who the plaintiffs contend organized the plot to deprive the plaintiffs of their federally protected rights. The McCullys reside in premises adjoining the "Surf and Sand" and formerly owned a bar and restaurant in Montauk. The "public" defendants are the other defendants. Each one holds a public office, and their actions are "under color of state law." They are John Doyle, Chief of Police; Barry Jarrett, Bruce Lyon, Kenneth Neuhaus, and Katherine Babcock, police officers; Shepard Frood and Edward Hults, members of the Town Board and Justices of the Peace; and Eugene Lester, Henry Mundt, and Frank Borth, members of the Town Board.

2. The district judge in his memorandum opinion stated that affidavits and exhibits were submitted by the defendants in support of their Rule 12(b)(1) and 12(b)(6) motions to dismiss. The use of such affidavits and exhibits converts a 12(b)(6) motion into a Rule 56 motion for summary judgment. Since the litigants never objected to the manner in which this conversion was accomplished, we see no reason for deciding whether the plaintiff received a reasonable opportunity to present pertinent material, as required when a 12(b)(6) motion is considered as a motion for summary judgment. See Dale v. Hahn, 440 F.2d 633, 638 (2 Cir. 1971). We note, however, that the plaintiffs' attorney did submit an affidavit in response to the defendants' motion to dismiss. Although the concluding paragraph of the district judge's opinion only refers to Rule 12(b)(6) we assume in light of earlier parts of his decision that he was granting summary judgment for the "public" defendants.

During the summer of 1971, the Mc-Cullys petitioned the Town Board, composed of certain of the "public" defendants, to adopt a parking ordinance prohibiting the parking of cars on either side of the highway in front of the "Surf and Sand." Later in 1971 the Town Board adopted an amendment to the Town's parking regulation which prohibited parking on either or both sides of the same highway for some distance on either side of the "Surf and Sand."

In the final set of factual allegations plaintiffs contend that the defendant Police Chief Doyle ordered defendants Jarrett and Lyon, and other police officers, to inspect the "Surf and Sand" on a regular daily basis at or about 2:00 a.m. on the pretext of ascertaining whether alcoholic beverages were being sold. These defendants continued the inspections in spite of being advised prior to August, 1971 by the Suffolk County Alcoholic Beverage Control Board that under the plaintiffs' hotel liquor license customers were permitted to remain in the hotel lobby after 2:30 a.m. In addition, on December 3, 1971, officer Lyon acting pursuant to an order of Doyle entered the "Surf and Sand," wrongfully accused Beatrice Reilly of serving alcoholic beverages after hours, and physically took Beatrice Reilly into custody. Through the alleged use of force she was brought to the police station where she was forced to disrobe and was searched by a police matron, the defendant Katherine Babcock, and held overnight in an unheated cell. Although she alleges that she was not allowed to call counsel and was denied bail, counsel appeared that morning and she was released. Charges were lodged against her for resisting arrest. This misdemeanor charge is still pending.

Beatrice Reilly contends that these events were part of a scheme engineered by the "private" defendants, the McCullys, with the aid of the "public" defendants to deprive the plaintiffs of privileges and immunities secured by the Constitution. In the prayer for relief the plaintiffs seek the following: 1) convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284; 2) declaratory and injunctive relief declaring invalid and enjoining the enforcement of: (a) the East Hampton Anti-Noise Ordinance; (b) Section 31 of the Town Law of New York State, N.Y. Town Law § 31 (McKinney, 1965), insofar as it permits justices of the peace to serve as members of the Town Board; (c) Section 20 of Article 6 of the state constitution, Section 31 of the Town Law, N.Y. Town Law § 31 (McKinney, 1965), and Section 105 of the Uniform Justice Court Act, Uniform Justice Court Act § 105 (McKinney, Supp. 1971–73), insofar as they allow non-lawyers to serve as judges in certain towns and villages; 3) a declaratory judgment that the Alcoholic Beverage Control Law of New York and the Rules and Regulations promulgated thereunder are not violated by the plaintiffs when the plaintiffs permit friends or guests to remain near the bar after 2:30 a.m.; 4) an injunction restraining the enforcement of these alcoholic control laws and regulations against the plaintiffs; and 5) equitable relief and money damages against all the defendants for conspiring to deprive plaintiffs of their federal constitutional and civil rights.

I

Except for the money damage claim for violation of plaintiffs' federally secured rights, the complaint asks a federal court to declare unconstitutional and to enjoin the enforcement and utilization of various local and state laws, and a state constitutional provision. The posture of this litigation makes such relief inappropriate at this juncture.

The convening of a three judge court to enjoin the enforcement of the "Anti-Noise Ordinance" is clearly unwarranted. The Supreme Court has held that "the term 'statute' in § 2281 does not encompass local ordinances or resolutions." Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 1548, 18 L.Ed. 2d 643 (1967). See also Board of Re-

gents v. New Left Education Project, 404 U.S. 541, 543, 92 S.Ct. 652, 30 L. Ed.2d 697 (1972). The noise pollution statute in the instant case is obviously a local ordinance, and a three-judge court is unnecessary to enjoin its enforcement.

The other statutes and the one state constitutional provision attacked in this action would come within the purview of § 2281. However, neither a three-judge court nor a single federal judge should at this point hear the dispute. This also applies to the demand that a single federal judge grant the plaintiffs' relief concerning the noise pollution statute.

■■ Federal intervention would require the court to examine the constitutionality of a local criminal statute dealing with noise control, as well as the constitutionality of state laws permitting Beatrice Reilly to be tried before a justice of the peace who also sits on the Town Board and is not an attorney. A federal court may not assert jurisdiction over these issues at this time. Similarly, a federal constitutional attack on Beatrice Reilly's first conviction for violating the "Anti-Noise Ordinance" may no longer be heard as judgment of that conviction has become final, Respress v. Ferrara, 321 F.Supp. 675 (S.D.N.Y. 1971) (three-judge court); and Murray v. Oswald, 333 F.Supp. 490 (S.D.N.Y. 1971).

■ Plaintiffs, however, also seek declaratory and injunctive relief concerning the Town Law and the noise control ordinance, stemming from the additional summonses issued to her and her employee following the first conviction under the "Anti-Noise Ordinance." The employment of a three-judge court here would violate the doctrine enunciated by the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). In *Younger* the Court held that

before a federal court could enjoin a pending state court criminal proceeding, the moving party must show that the pending state prosecution will cause irreparable harm which is both "great and immediate," a showing of urgency more compelling than a showing of possible irreparable harm in the future. Younger v. Harris, *supra*, 401 U.S. at 46, 91 S.Ct. 746. The Court also rejected the view that its prior opinion in Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), stands for the proposition that a federal court can restrain the enforcement of a state statute solely by a showing that on its face the statute violates the First Amendment. In *Samuels* the Court held that the *Younger* principles dealing with the propriety of federal injunctive relief would also govern the use of federal declaratory relief in connection with pending state criminal proceedings.

■ Applying these principles we conclude that federal intervention in the state prosecution pending against Beatrice Reilly is foreclosed at this time. There is no reason to believe that Beatrice Reilly would not be afforded the opportunity to raise her constitutional claims in the state court proceedings. From our review of the record it is not even apparent that Beatrice Reilly in the first prosecution under the noise statute raised the constitutional objections to the justice of the peace system that she now presents in her civil rights complaint and in her demand for a three-judge court. The plaintiffs have made no showing, other than a few highly conclusory allegations, that any unusual circumstance as contemplated in Younger v. Harris, *supra*, 401 U.S. at 54, 91 S.Ct. 746, exists to warrant the assertion of federal intervention.[3] Nor does our reading of the various pertinent statutes justify the conclusion that every clause, sentence and paragraph in these statutory and constitutional provi-

---

3. Gibson v. Berryville, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488, decided after the argument in this case, does not call for a different conclusion. The Court simply refused to extend the doctrine of Younger v. Harris, *supra*, to a state administrative proceeding pending before an allegedly incompetent tribunal.

sions flagrantly violate express constitutional prohibitions. See Younger v. Harris, *supra* 401 U.S. at 53–54, 92 S.Ct. 746; Watson v. Buck, 313 U.S. 387, 402, 61 S.Ct. 962, 85 L.Ed. 1416 (1941).[4]

The record is not clear on the status of any state proceeding for violation of the Alcoholic Beverage Control Laws. Paragraph 27 of the complaint states that Beatrice Reilly was taken into custody for serving alcoholic beverages after hours and that she was charged with resisting arrest. There is no assertion that she was charged with violating the alcoholic beverage laws or that any prosecution pursuant to these laws or regulations is currently pending. In any event we fail to see how paragraphs 25, 26 and 27 of the complaint concerning these laws state a claim for federal relief. Essentially this part of the complaint charges certain police officers with acting contrary to a state law. To invoke federal jurisdiction the plaintiff must allege that these laws violate the federal constitution or that their enforcement against the plaintiff is being conducted in an unconstitutional manner.

■ The complaint clearly fails to allege that the Alcoholic Beverage Control Laws and regulations violate the federal constitution. The allegations also fail to state a claim for relief concerning the enforcement of these laws. The plaintiffs fail to allege that they were singled out for discriminatory treatment, or that the police permitted others to engage in the same activity with impunity while the plaintiffs were harassed and arrested for similar actions. Such discriminatory administration of an otherwise valid statute would deprive plaintiffs of equal protection of the laws. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.

Ct. 1064, 30 L.Ed. 220 (1886). See also Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Shock v. Tester, 405 F.2d 852 (8 Cir.) cert. denied, 394 U.S. 1020, 89 S.Ct. 1641, 23 L.Ed.2d 45 (1969). The complaint fails to allege and the affidavit submitted on behalf of the plaintiffs by their attorney fails to elaborate on any such discriminatory enforcement of the state laws and regulations.

## II

■ In addition to the effort to attack the validity of certain statutes and ordinances, the complaint seeks damages and injunctive and declaratory relief against the plan of the "public" and the "private" defendants to deprive plaintiffs of their federally protected rights. In our view, the allegations of the complaint fail to set out in sufficient detail a conspiracy under color of state law to deprive plaintiffs of their constitutional and civil rights.

■■ The "public" defendants were acting pursuant to a local anti-noise ordinance and state alcoholic beverage laws and regulations. The police officers and the justices of the peace enjoy at least a qualified privilege when acting pursuant to laws and regulations. See Christman v. Skinner, 468 F.2d 723 (2 Cir.1972); Nelson v. Knox, 256 F.2d 312 (6 Cir.1958). Moreover, the Supreme Court has held that the defense of good faith and probable cause is available to a police officer in an action under § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The complaint in the instant case negates any contention that the "public" defendants deliberately and with malice participated in a scheme to deprive plaintiffs of their civil rights.

---

4. Beatrice Reilly's main constitutional attack centers on her prior and contemplated trial before the justice of the peace who also serves on the Town Board. The issue is whether this arrangement violates the principles of Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) and Tumey v. Ohio,

273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), or is permissible under Dugan v. Ohio, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). We believe for the reasons articulated above that a decision on this issue at this time would be an unwarranted exercise of federal judicial authority.

The ninth paragraph alleges that the "McCullys induced the other defendants, intentionally and consciously, or unintentionally and unconsciously, to join in the aforesaid plan and scheme." The statement by the plaintiff that the defendants may have acted "unintentionally and unconsciously" rebuts any assertion of bad faith or malice on the part of the "public" defendants. Without the intentional participation of these "public" defendants in the scheme, a § 1983 action must fail for lack of a person acting under color of state law.

 Paragraphs 23 and 24 of the complaint endeavor to establish a civil rights action on the basis that the McCullys induced the defendant members of the Town Board to adopt parking ordinances. There is no allegation that this action deprived the plaintiffs of equal protection of the laws through discriminatory legislation. More significantly, it would be highly undesirable precedent to subject a citizen to a civil rights action for merely exercising his right to seek legislation from the properly constituted legislative bodies. The use of the legislative process by private citizens should be encouraged rather than discouraged by the courts.

 Finally parts of paragraphs 15 and 27 remain. In part the plaintiff, Beatrice Reilly, alleges that on two different occasions Officer Jarrett and Officer Lyon used force and violence to arrest her. An action pursuant to § 1983 is established when local law enforcement officers acting under color of state law use excessive force in the enforcement of state and local laws. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Arroyo v. Walsh, 317 F.Supp. 869 (D.Conn.1970); Rosenberg v. Martin, 478 F.2d 520 at 526 (2 Cir. 1973); and Johnson v. Glick, 481 F. 2d 1028 (2 Cir. 1973). The complaint here fails to allege any use of excessive police force or that the procedures followed in arresting and detaining her went so far beyond what would normally be required in detaining a person overnight as to constitute a cause of action under § 1983.

Accordingly, we affirm the dismissal of this action as to all allegations in the complaint.