**Commonwealth** of the Northern Mariana Islands, Plaintiff/Appellee,

v.

Vicente Flores **Kaipat,** Defendant/Appellant.

Appeal No. 94-041

Traffic Case Nos. 93-7529 & 93-8739

August 3, 1995

Argued and Submitted July 7, 1995

Counsel for appellant: Gregory Baka, Assistant Public Defender, Saipan.

Counsel for appellee: Nicole C. Forelli, Assistant Attorney General, Saipan.

BEFORE: VILLAGOMEZ, Acting Chief Justice, ATALIG, Justice, and CRUZ, Special Judge.

ATALIG, Justice:

█The appellant, Vicente Flores Kaipat ("Kaipat"), appeals from an order denying his motion to reconsider a fine imposed upon him by the trial court. We have jurisdiction pursuant to 1 CMC § 3102, and affirm.

## ISSUE PRESENTED AND STANDARD OF REVIEW

The sole issue raised before us is whether the use of traffic fines as the source of funding for a proposed Commonwealth of the Northern Marianas ("CNMI") judicial complex, under the Judicial Building Fund Act of 1990, 1 CMC § 3405 ("Act"), violates Kaipat's due process right to a fair trial under the Fifth and Fourteenth Amendments to the U.S. Constitution.

█The constitutionality of a statute is a question of law reviewed de novo. *See In re Estate of Tudela*, 4 N.M.I. 1, 2 (1993), *appeal dismissed*, 43 F.3d 1479 (9th Cir. 1994).

## FACTUAL AND PROCEDURAL BACKGROUND

Kaipat was found guilty of a variety of traffic offenses committed in two separate incidents for which he had been cited on October 16, 1993, and November 14, 1993. Included in the sentencing was both a term of imprisonment of sixty days, with two years probation, and a fine of one thousand dollars.[1]

At sentencing, Kaipat moved orally for reconsideration of the fine imposed, arguing that it violated his rights to due process. This motion was renewed in written form on April 12, 1994. The trial court concluded that Kaipat's "claim that the Judicial Building Funds violates his rights to due process of law does not meet the standards of any of the applicable tests for judicial partiality." *Commonwealth v. Kaipat*, Traf. Nos. 93-7529 & 93-8739 (N.M.I. Super. Ct. Sept. 20, 1994) (decision at 7). Kaipat timely appealed from this decision.

## ANALYSIS

Kaipat argues that the Act[2] violates his due process right to a fair trial under the Fifth and Fourteenth amendments to the U.S. Constitution because it gives judges both an improper incentive to levy a fine against him and an appearance of partiality.[3] We disagree and conclude that Kaipat's due process arguments are without merit.

█The disqualification of a judge may be mandated statutorily, by the Commonwealth Code of Judicial Conduct, or constitutionally, under the Fifth and Fourteenth Amendments.[4] *Aetna Life Ins. Co. v. Lavoie*, 475

---

[1] *See Commonwealth v. Kaipat*, Traf. Nos. 93-7529 & 93-8739 (consol.) (N.M.I. Super. Ct. Mar. 11, 1994) (Judgment and Probation/Commitment Order).

[2] The Act provides that all fines formerly paid to the CNMI Treasury are to be deposited in the Judicial Building Fund ("Fund"). 1 CMC § 3405. "The purpose of the [Fund] shall be to pay the expenses to . . . construct and furnish a suitable building or buildings for the judicial branch of the government." 1 CMC § 3405(b).

[3] *See* Appellant's Brief at 6-8 and Defendant's Motion to Reconsider Sentence at 4, *Kaipat*, *supra* note 1 (filed Apr. 12, 1994) (judges have an official and personal interest in the levying of fines, "so as to hasten the day of departure from the old, miserable facilities into a shiny, new judicial complex").

[4] Recusal of a judge may be mandated statutorily or by the judicial code of conduct where, for example: (1) the judge's "impartiality might reasonably be questioned" and waivers are

U.S. 813, 106 S. Ct. 1580, 1584, 89 L. Ed. 2d 823 (1986) (recusal mandatory because case made new law and pivotal judge had direct interest in similar lawsuit); *In re Virginia Elec. & Power Co.*, 539 F.2d 357, 369 (4th Cir. 1976). However, "most [legislated] matters relating to judicial disqualification [do] not rise to a constitutional level." *Aetna*, 475 U.S. at 820, 106 S. Ct. at 1584, 89 L. Ed. 2d at 832 (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702, 68 S. Ct. 793, 804, 92 L. Ed. 1010 (1948)).[5]

■ While the U.S. Supreme Court has determined that a "'direct, personal, substantial, pecuniary'" interest of a judge gives rise to a constitutional violation and requires recusal under the Fourteenth Amendment, *Aetna*, 475 U.S. at 824, 106 S. Ct. at 1586, 89 L. Ed. 2d at 834 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 749 (1927)); see also *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972) (imposition of fines by mayoral judge from which substantial portion of village funds received), it has declined to extend this to other bases of recusal where not warranted by the allegations. *Aetna*, 475 U.S. at 821, 106 S. Ct. at 1585, 89 L. Ed. 2d at 832 (declining to determine if allegations of prejudice or bias require recusal under due process)[6]; *cf. Dugan v. Ohio*, 277 U.S. 61, 48 S. Ct. 439, 72 L. Ed. 784 (1928) (conviction by mayoral judge not violative of due process where judge exercised only judicial functions and receipt of salary was independent of convictions).

Kaipat contends that this matter falls, along a constitutionality continuum, somewhere between *Tumey* and *Ward* and *Dugan*. We disagree. In each of these cases, the Court was concerned not with whether an earmarking of fines alone violated a defendant's right to a fair trial but whether the respective judges had a direct pecuniary interest in *convicting* the defendants. *See, e.g., Tumey*, 273 U.S. at 523, 47 S. Ct. at 441 (judge had a "direct personal pecuniary interest in *convicting* the defendant who came before him for trial, in [fines]. . . which he would not have received if the defendant had been acquitted") (emphasis added); *Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir. 1994) ("financial interest in convicting a defendant creates a presumption of bias") (citing *Tumey*, 273 U.S. at 510, 47 S. Ct. at 445), *cert. denied*, ___ U.S. ___, 115 S. Ct. 915, 130 L. Ed. 2d 796 (1995)).[7]

In essence, the defendants in *Tumey*, *Ward* and *Dugan* argued that the fines created an incentive for the court to convict and then fine them, thereby denying them their right to a fair trial. Hence, these cases are legally inapposite to, and do not support Kaipat's arguments in, the instant matter. Kaipat, while arguing that the Act effectively denies him his right to a fair trial, contends neither that the trial court judges have a direct interest in the fund, nor that the allocation of fines to the Fund creates an incentive for judges to convict a defendant.

■ Furthermore, for a statutory penalty scheme to constitute an unconstitutional deprivation of a defendant's due process right, it must "offend[] some principle of justice so rooted in the traditions and conscience of [the] people as to be ranked as fundamental." *See Aetna*, 475 U.S. at 821, 106 S. Ct. at 1585, 89 L. Ed. 2d at 832 (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S. Ct. 2319, 2322-2323, 53 L. Ed. 2d 281, 287 (1977)). Kaipat's allegations that the judges would benefit from a modern courthouse, see *supra* note 3, do not implicate either an appearance of impropriety or indirect benefit which would mandate recusal under the Fourteenth Amendment. They simply do not indicate an offense to a fundamental principle of justice under the pertinent case law. *Cf. Aetna*, 475 U.S. at 821, 106 S. Ct. at 1585, 89 L. Ed. 2d at 832; *Paradis*, 20 F.3d at 958

---

not obtained; and (2) the judge has either an indirect or direct interest in the outcome of the proceeding. 1 CMC § 3308(a)-(e) and Com. Code Judic. Cond. I-III (same).

[5] Not "'[a]ll questions of judicial qualification . . . involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion.'" *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 1584, 89 L. Ed. 2d 823, 831 (1986) (quoting and on other grounds clarifying *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 749 (1927)).

[6] "Certainly only in the most extreme of cases would disqualification on th[e] basis [of bias or prejudice] be constitutionally required . . . ." *Aetna*, 475 U.S. at 821, 106 S. Ct. at 1585, 89 L. Ed. 2d at 832. "Traditionally, the Court does not undertake to 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.*, 475 U.S. at 827 n.4, 106 S. Ct. at 1588 n.4, 89 L. Ed. 2d at 836 n.4 (citation omitted). *Cf. State v. Conlin*, 832 P.2d 225, 227-28 (Ariz. App. Div. 1992) (in determining if statutory fining scheme constitutional, court only looks to see if judges have direct interest in levying fines).

[7] *See also Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 62, 93 S. Ct. 80, 83-84, 34 L. Ed. 2d 267, 271 (1972) (discussing "incentive to *convict*") (emphasis added); *Dugan v. Ohio*, 277 U.S. 61, 65, 48 S. Ct. 439, 440, 72 L. Ed. 784 (1928) (no violation where "mayor [judge] . . . receives a salary which is not dependent upon whether he convicts in any case or not . . . and he receives a salary in any event, whether he convicts or acquits").

(absent direct financial interest defendant must "demonstrate that [judge] failed to act impartially or appeared to act in a biased manner"); *United States v. Huffington*, 952 F.2d 275, 279 (9th Cir. 1991) (requiring "extreme" appearance of partiality to constitute violation of Fourth Amendment requisite of neutral and detached magistrate).[8]

## CONCLUSION

Based on the foregoing, we hereby **AFFIRM** the trial court's Sept. 20, 1994, decision denying Kaipat's motion for reconsideration.

---

[8] In *United States v. Huffington*, 952 F.2d 275, 279 (9th Cir. 1991), the Ninth Circuit noted "that the cases demonstrate a measure of caution on the part of the courts before concluding that mere appearances of partiality have, in fact, risen to the level of constitutional error."